IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24- |
| v. | : | DATE FILED: |
| CARLOS SACANELL | : | VIOLATIONS:<br>15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 (securities fraud – 1 count) |
| | : | 18 U.S.C. § 1001 (false statement to a federal agency – 1 count) |
| | : | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

1. Defendant CARLOS SACANELL was a resident of Swarthmore, Pennsylvania.

2. Defendant CARLOS SACANELL was in a domestic relationship with Person #1, who was employed by Oak Street Health, Inc. ("Oak Street Health") in an executive role.

3. Oak Street Health was a publicly traded health care company with headquarters in Chicago, Illinois. Oak Street Health's stock was registered under Section 12(b) of the Securities Exchange Act of 1934 and was traded on the New York Stock Exchange ("NYSE") under the ticker symbol "OSH."

4. Person #2 was employed by Oak Street Health in an executive role and was Person #1's supervisor.

5. CVS Health Corp. ("CVS") was a publicly traded health care company with headquarters in Woonsocket, Rhode Island. CVS's stock was registered under Section 12(b) of the Securities Exchange Act of 1934 and was traded on the NYSE under the ticker symbol "CVS."

6. In or about September 2022, CVS expressed to Oak Street Health an interest in acquiring Oak Street Health. Negotiations between CVS and Oak Street Health continued until the acquisition was publicly announced by CVS and Oak Street Health on the morning of February 8, 2023. During the course of the negotiations, at various times, Oak Street Health disclosed details regarding the planned acquisition to employees of Oak Street Health, including Person #1. Oak Street Health advised employees who learned about CVS's planned acquisition of Oak Street Health, including Person #1, that all information related to the transaction was strictly confidential.

7. Defendant CARLOS SACANELL owed duties of trust and confidence to Person #1, as her domestic partner. Defendant SACANELL knew that Person #1 expected that defendant SACANELL would maintain the confidentiality of any material nonpublic information that defendant SACANELL obtained from Person #1, and defendant SACANELL understood that he could not use, share, or trade on the basis of any material nonpublic information that he obtained or learned from Person #1 that had been entrusted to Person #1 through Person #1's employment with Oak Street Health.

8. Call options were financial contracts that gave the buyer the right to buy a stock at a specified price (the "strike price") within a specific time period (the "expiration date"). Individuals typically purchased call options when they believed the price of a stock would

increase by the expiration date, because the option would give them the right to purchase the stock for a price that was less than the market price at the expiration date.

**CVS Acquired Oak Street Health, and Defendant CARLOS SACANELL Obtained Material Nonpublic Information About the Acquisition from Person #1**

9. On or about January 9, 2023, as part of Person #1's job duties at Oak Street Health, Person #1 learned that CVS was planning to acquire Oak Street Health and that the acquisition was scheduled to be announced on or about January 23, 2023.

10. From on or about January 9, 2023 to January 10, 2023:

   a. Person #1 provided to defendant CARLOS SACANELL information regarding the planned CVS-Oak Street Health acquisition, including that the planned acquisition was scheduled to be announced on or about January 23, 2023. This information was not publicly available. Person #1 further stated in a text message to defendant SACANELL that "I feel like we lost potential but gained certainty," to which defendant SACANELL responded, "Yeap [sic], exactly, done deal, no more guessing."

   b. Person #1 further advised defendant SACANELL that this information was confidential and could not be shared, and defendant SACANELL acknowledged the need to keep the information confidential and advised Person #1 not to tell other employees at Oak Street Health about the information.

11. On or about January 20, 2023, Oak Street Health and CVS agreed to not proceed with the planned acquisition, which had been scheduled to be announced on or about January 23, 2023, and to potentially resume negotiations after the Centers for Medicare & Medicaid Services ("CMS") issued the Medicare Advantage Risk Adjustment Data Validation Program Final Rule (the "RADV Final Rule"), which was expected to be announced on or about February 1, 2023.

12. From on or about January 20, 2023 to January 23, 2023:

   a. As part of Person #1's job duties at Oak Street Health, Person #1 learned that CVS's planned acquisition of Oak Street Health was no longer going to be announced on or about January 23, 2023 and that negotiations between CVS and Oak Street Health would potentially be resumed after the RADV Final Rule was issued.

   b. Person #1 provided this information, which was not publicly available, to defendant CARLOS SACANELL.

13. On or about January 30, 2023, CMS issued the RADV Final Rule.

14. On or about February 1, 2023:

   a. In response to a news article regarding the RADV Final Rule, Person #1 said in an email to Person #2, "[i]t's not clear to me if this is a favorable outcome or not. Seems like a less harsh decree than we might have seen." In response, Person #2 said, "My perspective matches your's [sic]. I am guessing CVS was most interested in how the markets would react to the announcement – the markets seem to have decided it was better than expected." This information was not publicly available.

   b. Later that day, defendant CARLOS SACANELL asked Person #1 via text message if there was "bad news" because Oak Street Health's stock price was "crashing today." In response, Person #1 told defendant SACANELL that the RADV Final Rule was "not as harsh as it might have been" and that the share prices of health care stocks as a whole were trading lower because the RADV Final Rule "suggests Medicare Advantage plans might need to return money to the government so I guess folks are worried." This information was not publicly available.

15. From on or about February 2, 2023 to on or about February 3, 2023:

    a. As part of Person #1's job duties at Oak Street Health, Person #1 learned via an email that CVS's planned acquisition of Oak Street Health was "likely . . . going to come to fruition" and was going to be announced on or about February 8, 2023.

    b. Person #1 provided this information, which was not publicly available, to defendant CARLOS SACANELL.

16. On or about February 6, 2023, after the close of the stock market, news outlets reported that CVS and Oak Street Health were close to an agreement for CVS to acquire Oak Street Health for $39 per share and that the deal could be announced later in the week. Oak Street Health's share price rose from $25.96 at the close of trading on February 6, 2023 to $33.68 at the close of trading on February 7, 2023.

17. On or about February 7, 2023, defendant CARLOS SACANELL told Person #1 via text message that news reports about CVS's planned acquisition of Oak Street Health were "out everywhere," to which Person #1 responded by telling defendant SACANELL that "we still have to be quiet" about the planned acquisition.

18. On or about the morning of February 8, 2023, Oak Street Health and CVS issued a joint press release announcing that CVS had agreed to acquire Oak Street Health for $39 per share and the closing of the acquisition was scheduled to take place in 2023. Oak Street Health's share price rose from $33.68 at the close of trading on February 7, 2023 to $35.23 at the close of trading on February 8, 2023.

19. From on or about February 9, 2023 to April 6, 2023, Oak Street Health's share price at the close of trading was between $34.57 and $38.84.

20. On or about May 2, 2023, CVS and Oak Street Health closed on the acquisition, at $39 per share.

## THE SCHEME

21. From on or about January 9, 2023 through on or about April 6, 2023, in the Eastern District of Pennsylvania and elsewhere, defendant

## CARLOS SACANELL

willfully and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, used and employed manipulative devices and contrivances in contravention of the rules and regulations prescribed by the Securities and Exchange Commission, namely, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit upon persons in connection with purchases and sales of Oak Street Health's securities.

22. It was a part of the scheme that defendant CARLOS SACANELL used material nonpublic information that he obtained from Person #1 about CVS's planned acquisition of Oak Street Health, in breach of the duties of trust and confidence defendant SACANELL owed to Person #1, to execute transactions in Oak Street Health's securities and as a result made illegal profits of approximately $617,000. This material nonpublic information was not available

to the public at large and material in nature such that an average investor would have wanted to know the information.

## INSIDER TRADING ACTIONS

23. After receiving from Person #1 the material nonpublic information described in Paragraphs 9 and 10(a) concerning CVS's planned acquisition of Oak Street Health, from on or about January 11, 2023 to on or about January 20, 2023, defendant CARLOS SACANELL purchased approximately 28,580 shares of Oak Street Health stock and approximately 192 call option contracts in Oak Street Health, with expiration dates of February 17, 2023.

24. After receiving from Person #1 the additional material nonpublic information described in Paragraph 12(a) concerning CVS's planned acquisition of Oak Street Health, from on or about January 23, 2023 to on or about January 24, 2023, defendant CARLOS SACANELL sold approximately 24,200 shares of Oak Street Health stock.

25. Starting approximately ten minutes after receiving from Person #1 the additional material nonpublic information described in Paragraph 14(b) concerning CVS's planned acquisition of Oak Street Health, on February 1, 2023, defendant CARLOS SACANELL purchased approximately 5,000 shares of Oak Street Health stock and approximately 130 call option contracts in Oak Street Health, with expiration dates of February 17, 2023.

26. After receiving from Person #1 the additional material nonpublic information described in Paragraph 15(a) concerning CVS's planned acquisition of Oak Street Health, on February 3, 2023, defendant CARLOS SACANELL purchased approximately 17,300 shares of Oak Street Health stock and approximately 950 call option contracts in Oak Street

Health, with expiration dates of February 17, 2023.

27. On or about February 3, 2023, defendant SACANELL traded more option contracts in Oak Street Health than any other individual or entity, including institutional investors, did on that day.

28. On or about February 10, 2023—after the acquisition was publicly announced on February 8, 2023—defendant CARLOS SACANELL sold the 1,313 call options in Oak Street Health that defendant SACANELL purchased from January 11, 2023 to February 3, 2023, for a profit of approximately $404,000.

29. From on about February 10, 2023 to on or about April 6, 2023, defendant CARLOS SACANELL sold the 26,680 shares in Oak Street Health stock that defendant SACANELL owned as of February 3, 2023, for a profit of approximately $212,000, based on the February 8, 2023 closing price of $35.23 per share.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 20 and 23 through 29 of Count One of this indictment are incorporated here.

2. On or about April 3, 2024, in Horsham, in the Eastern District of Pennsylvania, defendant

**CARLOS SACANELL,**

in a matter within the jurisdiction of the United States Department of Justice, an agency of the executive branch of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation ("FBI"), in that defendant SACANELL told the FBI that Person #1 did not provide defendant SACANELL information regarding CVS's planned acquisition of Oak Street Health before the acquisition was publicly announced on February 8, 2023, when, in truth and in fact, as defendant SACANELL well knew, Person #1 provided defendant SACANELL information regarding the planned transaction, including the material nonpublic information described in Paragraphs 9, 10(a), 12(a), 12(b), 14(a), 14(b), 15(a), and 15(b) of Count One of this indictment.

In violation of Title 18, United States Code, Section 1001.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    As a result of the violation of Title 15, United States Code, Sections 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5 set forth in Count One of this indictment, defendant

**CARLOS SACANELL**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offense, including, but not limited to, the sum of approximately $617,000.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

*Christine & Ayers for*

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

No._____

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

CARLOS SACANELL

INDICTMENT

Counts
**15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 (securities fraud – 1 count)
18 U.S.C. § 1001 (false statement to a federal agency – 1 count)
Notice of forfeiture**

File
Of _____ A.D. 20 _____

Foreperson

Bail, $ _____